UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------
ELAINE WANG,

       Plaintiff,

v.

CHINOOK THERAPEUTICS, INC., ERIC DOBMEIER, SRINIVAS AKKARAJU, ROBERT W. AZELBY, JEREL DAVIS, WILLIAM M. GREENMAN, MICHELLE GRIFFIN, MAHESH KRISHNAN, and DOLCA THOMAS,

       Defendants.
------------------------------------------------------

Civil Action No. 23-cv-05945

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Chinook Therapeutics, Inc. ("Chinook" or the "Company") and the members of Chinook's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Chinook by affiliates of Novartis AG ("Novartis").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on June 27, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Star Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Star Parent, Inc. ("Parent"), will merge with and into Chinook, with Chinook surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on May 10, 2023 (the "Merger Agreement"), each Chinook stockholder will receive $43.00 in cash (the "Merger Consideration") for each Chinook share owned. Both Merger Sub and Parent are affiliates of Novartis.

3.      As discussed below, Defendants have asked Chinook's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Centerview Partners LLC ("Centerview") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Chinook's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, an owner of Chinook shares and has held such shares since prior to the wrongs complained of herein.

10. Individual Defendant Eric Dobmeier has served as a member of the Board since April 2019 and is the Company's Chief Executive Officer.

11. Individual Defendant Srinivas Akkaraju has served as a member of the Board since July 2019.

12. Individual Defendant Robert W. Azelby has served as a member of the Board since April 2023.

13. Individual Defendant Jerel Davis has served as a member of the Board since December 2018.

14. Individual Defendant William M. Greenman has served as a member of the Board since June 2010.

15. Individual Defendant Michelle Griffin has served as a member of the Board since October 2020.

16. Individual Defendant Mahesh Krishnan has served as a member of the Board since March 2022.

17. Individual Defendant Dolca Thomas has served as a member of the Board since October 2020.

18. Defendant Chinook is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 400 Fairview Avenue North, Suite 900, Seattle, Washington 98109. The Company's stock trades on the NASDAQ Global Select Market under the symbol "KDNY."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

21. Chinook, a clinical-stage biotechnology company, focuses on the discovery, development, and commercialization of precision medicines for kidney diseases. The Company's lead clinical program is atrasentan, a Phase III endothelin receptor antagonist for the treatment of IgA nephropathy and other proteinuric glomerular diseases. Its product candidates also include BION-1301, an anti-APRIL monoclonal antibody that is being evaluated in a Phase I/II trial for IgA nephropathy; and CHK-336, an oral small molecule LDHA inhibitor used for the treatment of primary hyperoxaluria and also in research programs for other rare and severe chronic kidney diseases. Chinook is headquartered in Seattle, Washington.

22.     On June 12, 2023, the Company announced the Proposed Transaction:

SEATTLE, June 12, 2023 (GLOBE NEWSWIRE) -- Chinook Therapeutics, Inc. (Nasdaq: KDNY), a biopharmaceutical company focused on the discovery, development and commercialization of precision medicines for kidney diseases, today announced that it has entered into an agreement and plan of merger with Novartis AG pursuant to which Novartis will acquire Chinook for $40 per share in cash, or a total of $3.2 billion. This offer represents a premium of 83 percent to Chinook's 60-day volume-weighted average stock price and 67 percent to Chinook's closing price on June 9, 2023. In addition, Chinook shareholders will receive contingent value rights (CVRs) providing for payment of up to $4 per share upon the achievement of certain future regulatory milestones with respect to Chinook's lead product candidate, atrasentan. Total consideration including the contingent value right, if the milestones are achieved, would be approximately $3.5 billion. The transaction has been unanimously approved by the Boards of Directors of both companies.

"We are pleased that Novartis recognizes the significant value that the Chinook team has built with our pipeline of clinical and preclinical programs for patients with rare, severe chronic kidney diseases," said Eric Dobmeier, president and chief executive officer of Chinook Therapeutics. "We believe this transaction is great news for kidney disease patients and the programs we have built at Chinook. Through this merger, Novartis can apply its substantial resources to pursue broader development efforts and commercialization of atrasentan, zigakibart (BION-1301) and other programs in our pipeline to build its global renal therapeutic area."

Completion of the transaction is expected in the second half of 2023, pending approval by Chinook's stockholders and satisfaction of other customary closing conditions. Until that time, Chinook will continue to operate as a separate and independent company.

Centerview Partners LLC and MTS Health Partners, L.P. are serving as financial advisors, and Fenwick & West LLP is serving as legal counsel to Chinook.

**Transaction Details**

Under the terms of the merger agreement, Novartis will acquire all of the outstanding shares of Chinook through a subsidiary for a

      price of $40 per share in cash at closing. The CVRs to be issued to Chinook shareholders will provide for payments of up to an additional $4 per share with respect to specific regulatory approvals for atrasentan, $2 of which is related to IgA nephropathy and $2 of which is related to focal segmental glomerulosclerosis. The closing of the proposed transaction is subject to certain conditions, including approval by Chinook's stockholders, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary conditions. A copy of the merger agreement will be filed with the Securities and Exchange Commission ("SEC") and will be publicly available.[1]

* * *

23.    The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Chinook's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**    **The Materially Incomplete and Misleading Proxy Statement**

24.    On June 27, 2023, Chinook filed the Proxy Statement on Schedule 14A with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

---

[1] *Chinook Therapeutics Enters Into Agreement To Be Acquired By Novartis AG*, CHINOOK THERAPEUTICS (June 12, 2023), https://investors.chinooktx.com/news-releases/news-release-details/chinook-therapeutics-enters-agreement-be-acquired-novartis-ag.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25. The Proxy Statement fails to provide material information concerning financial projections by Chinook management and relied upon by Centerview in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company that are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Centerview to aid them in forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Chinook management provided to the Board and Centerview. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

26. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial measures, including Total Adjusted Gross Profit and Unlevered Free Cash Flow, but fails to provide line items used to calculate these measures *and/or* a reconciliation of these non-GAAP measures to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied upon by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP

measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

28. The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[2]

29. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP measures included in the Proxy Statement not misleading.

30. In addition, the Proxy Statement fails to disclose the adjustments made by Company management to reflect the risk factors with respect to Chinook's business for the purposes of preparing the Company Projections.

*Omissions and/or Material Misrepresentations Concerning Centerview's Financial Analyses*

---

[2] U.S. Securities and Exchange Commission, *Non-GAAP Financial Measures*, last updated Apr. 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

31. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the implied terminal value of the Company; (ii) the inputs and assumptions underlying the perpetuity decline rate of 25% year over year; (iii) the inputs and assumptions underlying the discount rates ranging from 11.5% to 13.5%; (iv) the tax savings from usage of Chinook's estimated federal net operating losses and Chinook's estimated future losses, as provided by Chinook management; (v) the estimated cash balance of the Company; and (vi) the number of fully diluted outstanding shares of Chinook stock as of June 7, 2023.

32. With respect to Centerview's *Analyst Price Target Analysis*, the Proxy Statement fails to disclose: (i) the Wall Street research analysts reviewed by Centerview; and (ii) the low and high stock price targets for Chinook published by each of the Wall Street research analysts.

33. With respect to Centerview's *Precedent Premium Paid Analysis*, the Proxy Statement fails to disclose: (i) the selected transactions and the premia paid in those transactions; and (ii) the basis for applying the reference range of 45% to 80% to the Company's closing stock price of $23.99 on June 9, 2023.

34. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders, although they could have done so without extraordinary effort.

39. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were

negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

40. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of Chinook within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Chinook, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Chinook, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Chinook, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: July 11, 2023

        **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

        /s/ *Benjamin Y. Kaufman*
        Benjamin Y. Kaufman
        Rourke C. Donahue

270 Madison Avenue  
New York, NY 10016  
Telephone: (212) 545-4620  
Fax: (212) 686-0114  
kaufman@whafh.com  
donahue@whafh.com  

*Attorneys for Plaintiff*